Mr Justice Stoj'iy
 

 delivered, the opinion of the Court.
 

 This is a writ oferror from1'the circuit court of the district of Maryland. The original suit was. an action for mesne, profits, brought by the plaintiffs .in error against Reinecker; and is the same cause which cáme before this Court, and-is reported in 11
 
 Wheaton's Reports,
 
 280. The cause .now comes again before this Court, upon certain, bills of exceptions, taken .by the plaintiffs in.error,, at the'new trial had under the mandate issued upon the former'judgment of reversal.
 

 Without going at large into the facts, as. they, came formerly before us, it is sufficient to state, that ■ the action is for. taking the mesne-profits of a certain pareel of land lying in a part of Baltimore, called Howard’s
 
 late
 
 addition- to Baltimore town, and- is designated as lot No. 802 in that addi-. tjon. Before the commencement of this suit, a recovery of the same premises was had in ejectment by the.same plaintiffs, (the husband, of one of them being now. added'as
 
 *618
 
 a party,) assessors, against onfer John C. F. Chirac, , who was admitted upon his prayer as landlord to defend the premises. The record of that recovery was offered in evidence at the former trial- against Reineckér, and rejected by the. court; and.that rejection constituted one of the grounds of the reversal.
 

 At -the -new trial after the introduction of certain evidence, which will he hereafter stated, the plaintiffs offered the same record in evidence, including the execution of the writ of possession, and other proceedings, in the ssune cause; to the admissibility of. vyhich,- as evidence of the plaintiffs’ possession, the defendant’s counsel did not. objectbut did object to it as evidence of the plairítiffs’ title tó the property. The court, however, admitted the record as
 
 prima facte
 
 evidence oí the plaintiffs’ title ;, and thereupon, the defendant filed an exception, which,, 'however, is not now before'this Court. ’
 

 The evidence alluded" 1 consisted of the'-testimony of witnesses to establish the facts, that ! » meeker had received, as landlord, the cents of the premises during the period Sued for; that he exfereised' the; rights -of ownership over- the sapie; that he was, at . the... time of the éjpetfnent brought, the real landlord, and had notice of the- suit,'employed Gbunsel. to defend it, and was, in fact, the substantial, litigant party'; arid that he derived his title to the premises' under the defendant in ejectment, John C. F. Chirac, by. intermediate conveyances executed before the ejectment. Thp-'evidence further.established a strict deduction of title, by tn»sne conVéyances, of the/Ipt in question, down to John Baptist Chirac, (the intestate,) under whom thp . plaintiffs claimed the same as heirs*
 

 The plaintiffs then proved by a surveyor, that he bad surveyed most of. the lines, arid streets'in Howard’s
 
 late
 
 addition to Baltimore town, -in ’ 1782, according to the official plot and location thereon in the mayor’s office (which plot was also then given in evidence' by the plaintiffs.to the jury); that
 
 he
 
 had run the fines of Ltitt’s lot, according , to the pátent or certificate thereof,, and that the premises described
 
 *619
 
 in the plaintiffs’declaration and in thetwrit of possession were , in Lun’s lot, arid: also within the said, addition, and were known as lot .802, &c.
 

 The plaintiffs,, after haying given in evidence the plot aforesaid, upon, which was located lot No. 802, and. Walnut street, then, gave in evidence, from the original book of entry and, record in the mayor’s office, certain, proceedings, condemning Walnut street to be shut up, and ordering.that each person interested by having lots in the street, be entitled to one half of such street on each side, &c.
 

 The defendant then offered in evidence another plot .in the same volume of city plots, being a plot of Howard’s addition to Baltimore, in 1766, in order to. show that the whole of Walnut street was contained within such last mentioned addition, already read in evidence, to the admission of which the plaintiffs objected, but the court overruled the objection and. permitted the plot to go to the jury-.'
 

 The admission of this evidence constitutes the first exception of the plaintiffs. It is in the first place, said, that itwas not proper evidence against the plaintiffs, after the recovery in ejectment, even if the plot in question hal been. duly authenticated. But, at all events-, it is contended that it is'not
 
 per se
 
 evidence, merely from the fact that it is-found in a volume of city plots, vyhich contained the general plot already in evidence^and which bad been specially authenticated fe.ythe s.urveyor'. We aré of opinion that this last objectibnhs well founded.'. The book itself had not' been authenticated as .a book of public plots regularly made; but a single plot only in the volume had been authenticated.. The whole yolutne therefore was not in. evidence; and if the defendant meant to use any other plot,.it was.his'duty to establish it. as evidence, by.competent proofs of its particular authenticity.
 

 The other'.objection assigned for rejection of' it admits of more, doubt. It is. said that -the effect of. this.‘evidence would be to.establish that Jqhn-B. Chirac, (the intestate,) had no title to a certain portion of'the land, recovered.in the' ejefctmen t Unless .the defendant vyas absolute.ly concluded by the judgment in that suit, he was certainly at .liberty to dispute any part of that title. And, if it were material for the plain
 
 *620
 
 tiffs, to prove- the actual location of the lot .802, and Walnut stréet; in Howard’s late addition, in 1782, no.reason, occurs to us, why the defendant was not at liberty to disprove the fact, by. showing that Walnut street was in Howard’s former addition, in 176.6. Ibis merely, evidence to rebut other parol evidence of the plaintiffs, as to .the.'location.
 

 The .plaintiffs then further, read in evi.dénce the depositions of certain witnesses in France* taken under a commission.to establish their .pedigree. The testimony was. to this effect; that J..B.-Chirac, the father of the intestate, had three wives ;. that by his second wife he had. two sbns; the intestate, and one Gabriel B. R. Chirac; that the intestate-died in 1709.; that his brother Gabriel-left France, and went to. the islands; .One-of-the witnesses said he died in the islands. Another witness stated, hat before 1797, she resided in Sf Domingo, and lived on a plantation near that of J, B.- Chirac (the intestate)-.; that she heard in St Domingo, that his brother came to the .intestate’s residence there, and it was publicly reported in the neighbourhood, that the said brother'had died; .that, she heard this at the house, of a-friend-where the intestate visited, and heard it very often, and that it was generally Stated .as á fact; that she never saw the brother, and never heard- that he was married, and. never heard of him as-being'alive since the report of his death; that she is no relation of the family,- arid never was at the intestate’s house while he was at St Domingo; and did not know or believe that there were any ladies living there when the brother died.
 

 The plaintiffs then offered to prove that the original commission'for taking the testimony issued in the said ejectment cause,'with the depositions taken .under the .same, were lost; and then offered to read to the. jury the bill of exceptions, contained in the record aforesaid, in order to show the pedigree of the plaintiffs’ family. But the court refused-to allow the same to be read in evidénceto the jury This refusal .constitutes the second exception, of the plaintiffs. The bill of exceptions so rejected was taken by the plaintiffs, and did. not refer to any depositions; but it stated that the plaintiffs gave in ¡'evidence to the jury, that the intestate was a
 
 *621
 
 a native of France that the lessors of the, plaintiffs (naming them) were the brothers and sisters, and grand niece, &c. of the intestate, &e..; “ and that neither the .father ñor 'mother? nor any brother or sister of .the whole b|ood (of. the saidin-téstate,-nor their issue ,or descendants? were living at, the time of his death.” -
 

 Upon consideration wé are of opinion that under the cir-pumstances/of this case, the evidence was ádmissiple for the, purpose of establishing thé pedigree of the plaintiffs’ family; and this is the only view in which it was presented-to the court. ■ It is well known that in case's of pedigree, the rules of law have beefn -relaxed in respect-to evidence,, to an extefit far beyo,nd~what has been applied to other cases. :This-relaxation is founded upon principles of public convenience and. necessity. In a case between the parties to the suit, in-whieh/this bill of exceptions, was taken', the evidence, would have been conclusive'. Although Reinecker was not the defendant, in that, suit, yét he was thé real landlord arid party iri- iritérest, and conducted the suit; and the evidence of the facts so proved, as to pedigree, ought under, such .circurri^ stances, we think, to be admitted as primé facie evidence against “him-. He. had the means, of contesting those facts, arid if he did not avail.himself of-those means','it may. fairly be presumed that He yielded to the sufficiency of the proofs.
 

 This was-the whole evidence ia.the cause; and it being closed'on both .sides, the plaintiffs.offered.the same record pf the recovery in the ejectment cause,, ^s
 
 conclusive
 
 'evidence of their right ánd. title to the premises, against J. C. E- Chirac, (the defendant therein) and'agáinst the defendant Reinecker holding under that title, which the court refused to admit. This.refusal constitutes the third exception of the plaintiffs.' Thé plaintiffs then- prayed the court to instruct the jury that if they believe the evidence, the plaintiffs have shown' a sufficient title to the premises in the declaration^ to entitle them in law to maintain their action against the defendant, which the .court refused; to give. And-this, refusal coristitutes the fourth exception of thé plaintiffs. There, was a .fifth exception, but it is unnecessary, to refer to it, because it is a mere repetition (apparently by mistake).of the; fourth-.
 

 
 *622
 
 Before, proceeding to consider these exceptions, it May be proper to say a few wo"rds explanatory. 6f that part of the forkWer decision of this Court as it !stands .reported in 1.1
 
 Wheaton’s Reports, 28D,
 
 ét seq. The record of the ejectment suit had been rejected by the court below as any evidence against* Reinecker-, although it was offered, in connection with other evidence, to 'establish' that Reinecker, although not- a party, on the record, was the .real landlord; arid had receivedthe rents and profits, and had' notice of the suit, and had emplóyed;counsel to .defend it, and resisted the recovery; Iri the opinion of the Court upon.thispoint, it was stated that, in- general; a recovery in ejec.tment, like, other judgments, binds only parties and privies.- It is conclusive evidence in an action for metric, profits against the tenant in possession, or other "defendant on record. But in relatiomto
 
 third persons
 
 the judgment is not conclusive; and if they afe sued in an action for mesne profits, they may controvert the ■plaintiff’s titlé at large. In süch- a suit (that- is-1<¡ say,- against
 
 third persons)
 
 the record of the; ejectment is not evidence to establish the plaintiff’s
 
 title,
 
 but is admissible to show the
 
 possession
 
 of the plaintiff. This proposition has been supposed at the bar to .indicate an opinion that, in the case then, before the Court, with reference to all 'thé circumstances of notice; and-rating of the rents, &c. by Reinecker, the record was only, evidence of-the possession and not of the title of the plaintiffs, Such was not the understanding Of the Court. The proposition was asserted as to
 
 third persons
 
 generally, who were strangers to the suit. Even as to such persons, it was asserted that -the record was admissible ip show the possession of the plaintiff. The particular circumstances, of Réinecker’s case, ás connecting him with the parties, were not, in that, part of the opinion; in the view of the Court. • In the subsequent commentary of thé Coqrt on the case, of Hunter vs. Britts, 3
 
 Campbell’s Rep. Abb,
 
 a doubt was intimated, -whether a mere notice,
 
 irt pais,
 
 to the landlord, who Was not a party.to thp record, Was conclusive'upon him; but not thé slightest doubt was intimated that it was prima facie evidence of title, as well as of possession, against him, under such circumstances^ The .point whether the record in the
 
 *623
 
 ejectment suit was not prima facie evidence ofj title in-the plaintiffs, as against a person standing in thé predicament of Reipeicker, was not decided at that tirro, and was not necessary to the decision.
 

 Upon consideration of the question presented by the third oxception above mentioned, we retain the opinion* that the record in* the ejectment suit was. not conclusive evidérice upon persons not -parties to the record; but we are also of ■ opiniori that it was
 
 prima
 
 /acre', evidence of thé plaintiffs’ .
 
 title
 
 and possession against Reinecker, under , the circumstances adduced in evidence. He had full notice of the suit,. and had the fullest means to defend it.- The parties upon the record wefe bis agents or tenants, and he, in effect, though not in form,, took upon himself the defence of the suit. The case is stronger than that of Hunter
 
 vs.
 
 Britts, and fairly within the reach .of the principle decided, by it. There was then, no error in the court in refusing to give this instruction.
 

 Thé fourth exception -can be sustained only upon, the ground that there was no fact in the cause upon which there was any doubtful or contradictory evidence. If there was any such evidence, it would • have been improper for the court to-withdraw the. question of its .credibility from- the jury. And if the evidence was,merely of a presumptive nature, it was riot for the court 4o. decide- as a point of .la w how much it ought to-weigh with the jury-. It-was properly their province,to.draw the conclusions of fact arising from- such' presumptions. They might háVe believed" the evidence, but at the same time not have been satisfied that it justified them in inferring from it other facts not positively proved.'.
 

 -. The real .difficulty in the case arises from the peculiar-structure-of the prayer of the plaintiffs, and the.intrriduction of.parol evidence at the -trial by them, to fortify what, had been already declared by the court to be prima facie evn dence, record evidence of title.
 

 If the court had been asked to instruct the jury that the evidénce of the plaintiffs, if 'believed by the jury, was competent in point of law, from which they might infer all the necessary facts tp maintain the action, unless.it was rebutted on the part of the defendant, it would, have, been unobjec-
 
 *624
 
 tioii.able. It would have. left the. matters of fact for the just consideration of the jury, upon the prima facie evidence of the plaintiffs.. But the difficulty.is, that a matter of fact, of vital conse’quence to the plaintiffs was, whether Gabriel, B. R. Chi-rac, the brother of the whole blood of the. intestate, was dead without leaving lawful issue upon the death of lhe intestate. ■ The plaintiffs very unnecessarily introduced parol evidence on this subject,'after the court had ruled that there the ejectment was-prima facie evidence of their title. The ■pato} evidence did not particularly establish the death of Gabriel (for. the bill of exceptions-had been rejected as evidence), although it was exceedingly strong, -as -pr.é.sutnptive •proof; and as such, it was the^province of,the jury to pass upon it. The court was right therefore in'refusing the prayer of the plaintiffs, because it trenched upon the proper province of. the jury, by requiring the court to assume a fact; which, was not absolutely proved, but, was matter of inference and presumption upon the whole testimony.
 

 The defendant afterwards prayed the court to instruct the jury .as follows: ' 1. That if from the evidence the jury believed that J. B. Chirac,, who died seised of the premises in- the declaration mentioned,, had any
 
 brother
 
 or
 
 brothers, sister
 
 or
 
 sisters
 
 of the. whole blood or their descendants, who survived the said ,J. B; Chirac the' younger, then the plaintiffs, are not entitled to recover. 2, That if the jury believe that the said John B. ..Chirac the. elder, had by his second wife, another son. besides the said .son J. B. Chirac the intestate,, then it' is incumbent upon, the plaintiffs ■ to show, befoie they can entitle themselves to .recover, that such son. died before, the said intestate without lawful issue. 3.' That-if the jury believed that the said1 John B. Chirac the elder had by his first wife a daughter, who married a certain' ^Samuel Bonfils, by whom she had a son named. John Baptist Bonfils, wbo married Ann Coton, who. had a .daughter .named Maria Bonfils, who married Desportes, one of the plaintiffs; it is incumbent upon the plaintiffs before they can entitle themselves to recover, to .show the death of the-great grandfather-,' grandmother and father, before the, impetra-ban of the -original writ in this cause;
 
 and that the plaintiffs have offered no evidence of these facts.
 
 The court gave the
 
 *625
 
 instructions so prayed for, and the plaintiffs filed their ex- • ception thereto-.
 

 The first instruction is open to two objections. It asks the court to instruct the jury, that if from the evidence they believed, (among other things), that' the intestate had any
 
 sifter'
 
 or
 
 sisters
 
 of the whole blood or their descendants, who survived- him, &c. the plaintiffs -were not entitled ¿to recover. Now there was not the slightest evidence from which the jury had a right to believe, the existence of any such sister or sifters; and without ^such evidence the court ought not' to have givfen the instruction, sintje it was calculated to mislead them, and to raise-a mere speculative question.
 

 But a still-more decisive, reason against it is, that by the law
 
 of desee tit
 
 of Maryland,- a person claiming as héir, must prove himself heir of the person - last actually seised of the estate ; and if the intestate had left a brother of the whole blood, who survived hint apd died without issue, and without ever having been’ actually seised of the estate, the plaintiffs would still have been entitled to recover, as heirs ofithe half blood'of the person last seised.
 

 -The second instruction was rightly given. It was not sufficient for. the plaintiffs to show that Gabriel was dead, but that he died without lawful issue; for otherwise such issue were entitled to . recover. The onus probandi was upon them, to establish every fact necessary to their .own heirshipand it cannot admit of doubt that this was necessary. The same rule is laid down in 3
 
 Starkie on Evidence,
 
 1099, and is supported by the case of Richards
 
 vs.
 
 Richards, there cited from Mr Ford’s MSS. and also by Doe
 
 vs.
 
 Griffin,
 
 15 East’s Rep.
 
 293.
 

 The third, instruction assumes to decide a question of fact, upon which we think there was evidence before the .jury. The record of the recovery in the ejectment suit was
 
 prima facie
 
 evidence of the plaintiffs’ title; and the depositions in the cause, and the structure of the interrogatories and answers, presupposed the death of the great grandfather, grandmother and father of the intestate. There was error then in the court in giving this instruction.
 

 
 *626
 
 Upon the whole the judgment must be reversed, arid the cause remanded with directions to award a venire facias de novo.
 

 This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Maryland, and was argued By counsel;- on consideration whereof, this Court is of opinion, that the sáid circuit court erred in admitting the plot offered in evidence by the defendant’s counsel, as stated-in-the plaintiffs’
 
 first
 
 bill of exceptions. And also erred, in refusing to.admit as evidence the bill of exceptions stated in the plaintiffs’
 
 second
 
 bill of exceptioris. And the said i circuit court also • erred, in granting the instructions firstly and
 
 thirdly
 
 prayed' for by the defendants, as stated in the. plaintiffs’
 
 sixth
 
 bill of exceptions. Whereupon, it is considered, ordered and. adjudged by this Court, that, for the errors aforesaid, the judgment of the said circuit court in this cause be, and the same is,. hereby reversed. and annulled; and that the said ¡cause be, and the same is, hereby-remanded. to the said circuit’court, with. directions to award a venire faci.as de n,ovo.