No. 2,614.

SEBASTIAN HODAPP, RESPONDENT, *v.* GEORGE SHARP, *et al.*, APPELLANTS.

STATE LANDS—ACT OF CONGRESS OF JULY 23, 1866.—CERTIFICATE OF PURCHASE—PRIMA FACIE EVIDENCE OF PURCHASE IN GOOD FAITH.—In an action to recover possession by the locator of a land warrant, the certificate of purchase from the State is *prima facie* evidence that the locator is a purchaser in good faith, and the burden of proof is on the defendant to show that the land is within the exceptions contained in section one, of the Act of Congress of July 23, 1866, to quiet land titles in California.

IDEM.—ERROR IN THE SELECTION OF LANDS.—An error in the selection of lands in lieu of those lands which are in fact *in place*, or in the selection of unsurveyed lands, is the error of the State officials; and, in the absence of any evidence that the purchaser was cognizant of such error, it will not deprive him of the position of a purchaser in good faith within the meaning of the Act of Congress.

IDEM.—WHEN TITLE PASSES TO THE STATE.—The selection of land on behalf of the State is not confirmed, nor does the title pass until the land is certified over to the State by the Commissioner of the General Land Office, as required by the second section of the Act of July 23, 1866.

IDEM.—WHEN PURCHASER MAY MAINTAIN ACTION FOR POSSESSION.—A purchaser from the State, whose selection falls within the second section of the Act, cannot maintain an action for the possession of the land before it is certified over to the State, unless the defendant has intruded upon his actual possession.

IDEM.—DATE OF CERTIFICATE OF COMMISSIONER OF GENERAL LAND OFFICE.—Where the evidence shows that the land selected had been certified over to the State by the Commissioner of the General Land Office, though the date of the certificate is not given, if no objection was made to the evidence it will be presumed that it was done prior to the commencement of the action.

PRACTICE—DAMAGES WHEN JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART.—In an action for the restitution of two separate tracts of land, where the judgment of the Court below was for plaintiff for both tracts and for damages, and the order of this Court affirms the judgment as to one tract and reverses it as to the other, if the record furnish no data for the apportionment of the damages, the entire judgment will be reversed unless all damages be remitted.

APPEAL from the District Court of the Seventh District, Solano County.

Action to recover possession of two quarter sections of land, situated in Solano County, to wit: the northwest quarter of section 10, and the southwest quarter of section 10, township 4 north, range 2 east; and for damages for the use and occupation of the same, and costs of suit.

Plaintiff introduced in evidence a certificate of purchase from the State of California to W. P. Holcomb, of the southwest quarter of section 10, bearing date December 31st, 1861, with the assignment of the same by Holcomb to plaintiff indorsed thereon. Also another certificate of purchase from the State of California to G. B. Saulsbury for three hundred and twenty acres of land including the northwest quarter of section 10, bearing date December 31st, 1861, with a deed from Saulsbury to Holcomb conveying said quarter section, and a deed from Holcomb conveying the same to plaintiff.

Judgment was for plaintiff for restitution of the land in controversy and for damages in the sum of two hundred and forty dollars and costs. Defendants moved for a new trial, which was denied and this appeal is taken from the judgment, and from the order denying defendants' motion for a new trial.

The other facts are stated in the opinion.

*Wm. Ewing*, for Appellants.

*Pendegast & Stoney*, for Respondent.

RHODES, C. J., delivered the opinion of the Court, CROCKETT, J., TEMPLE, J., and WALLACE, J. concurring·

In *Toland* v. *Mandell*, (38 Cal. 30), the Act of Congress of the 23d of July, 1866, to quiet land titles in California (14 U. S. Stats. 218) was presented for consideration, and the purpose and effect of several of its provisions were announced. It was, among other things, held that the locator of a land warrant "must show that he is a purchaser in good faith under the statute. Of these facts, however, his certificate of purchase is *prima facie* evidence, for it has been so declared by a statute of this State. It shows that the State has selected the land and sold it to a purchaser, and that he has made a payment thereon; that as against the State he has acquired an inchoate title—one which the State is bound to protect under her laws—thus satisfying, so far, the conditions of the first section of the Act of Congress. If the land falls within any one of the exceptions there stated, the defendants must prove it." The defendants in this case claim that they have overthrown the *prima facie* effect of the certificate of purchase, by showing that the lands, in lieu of which the lands in controversy were selected, were *in place* at the date of the selection, and that the purchaser, therefore, was not a purchaser in good faith. The proof is that those lands were *in place* at the date of the Surveyor-General's certificate—September 17th, 1869—but there is no evidence that they were *in place* in 1861, the date of the location.

But if it will be presumed that those lands were *in place* in 1861, because they were *in place* in 1869, still that fact will not show that the purchaser is not a purchaser in good faith, within the meaning of the Act of Congress. The defendants assert that as many as seven different selections have been made, in lieu of one and the same parcel of a sixteenth or thirty-sixth section. It was because of blunders of that kind, that legislation of the character of the Act of July 23d, 1866, became necessary. Had the lands in lieu of which the selections were made, not been *in place*—that is to say, had they been within a reservation, a private grant, or the like, and had the selection been made according to the mode prescribed, and from surveyed lands,

no Act of Congress, providing the means by which the selection might be ratified and confirmed would have been necessary, for the selection would have been valid. The error in the selection of lands, in lieu of those which are, in fact, *in place*, or in the selection of unsurveyed lands, is the error of the State officials; and whatever the rule might be, when it is shown that the purchaser was cognizant of such error, it is clear that in the absence of such evidence he will not be deprived, by means of such error, of the position of a purchaser in good faith, within the meaning of the Act of Congress. Were the rule otherwise, it would be difficult, if not impossible, to find a selection which was intended to be confirmed by that Act. The proviso to the first section, that the State "shall not receive under this Act a greater quantity of land for improvement or school purposes than she is entitled to by law," adds force to this construction. The proviso, so far as it relates to the sixteenth and thirty-sixth sections, would be senseless if it were not the purpose of the Act to confirm selections of lands, taken in lieu of lands which were *in place* at the date of the selection.

The northwest quarter of section 10, township 4 north, range 2 east—a part of the premises in controversy—was certified over to the State by the Commissioner of the Land Office. The date of the certificate is not given, but as no objection was taken to the evidence, and as the ground is not taken that the land was not certified over to the State before the commencement of the action, it will be presumed that it was done before that time. This made the purchaser's certificate of purchase valid and effectual, and entitled him to a recovery as to that quarter section of land, the defendants having entered after the passage of the Act of Congress.

There is no evidence in the record that the southwest quarter of the same section—the remainder of the premises in controversy—had been certified over to the State. The second section provides that the proper officer of the State shall notify the Register of the proper Land Office (if the

same has not already been done since the land was surveyed,) of the selection of the land on behalf of the State; and it is made the duty of the commissioner of the General Land Office to examine such selection, and if found to be in accordance with Section One, to certify the land over to the State. The selection, notwithstanding the words of the first section, is not confirmed, and title does not pass to the State until the land is certified over to the State; and as the purchaser, whose selection falls within the second section, acquires no right in the land except such as he acquires under the State, he cannot maintain an action for the possession of the land before it is certified over to the State, unless the defendant intruded upon his actual possession. In *Toland* v. *Mandell, supra,* the plaintiff was in possession when the defendant entered upon the land, and it was held that the provisions of Section 3 legalized the possession of locators upon unsurveyed land, until they should have an opportunity to present their claims for confirmation, as provided in the Act. The Act contains no such provision in respect to locations made upon land that had been surveyed at the passage of the Act; and if it contained such a provision, its effect would be merely to legalize such possession as the locator then held, but would not extend the right, until the selection should be approved and the land certified to the State by the Commissioner. There is no evidence in the case, that the defendants intruded upon the possession of the plaintiff (if any he had) of the southwest quarter of the section, and as to that land, the plaintiff is not entitled to a recovery.

The record does not furnish the data for the apportionment in respect to the two quarter sections of land, of the damages recovered for the use of occupation of the premises. The judgment must be reversed unless such damages shall be remitted.

Judgment reversed and cause remanded for a new trial, unless the plaintiff shall, within twenty days after the filing hereof, remit the damages recovered herein.

And it is further ordered, that upon the plaintiff's remit-

ting such damages within the time aforesaid, the judgment for the recovery of the possession of the northwest quarter of section 10, township 4 north, range 2 east, be affirmed; and that the judgment for the recovery of the possession of the southwest quarter of the same section, township and range, be reversed, and cause remanded for a new trial, as to the last mentioned tract of land.

SPRAGUE, J., expressed no opinion.